Metzger v. The Franklin Bank.

---

No. 12,695.

METZGER v. THE FRANKLIN BANK.

SUPREME COURT.—*Errors.—Waiver.*—Alleged errors, which are not discussed by counsel, will be deemed waived.

PRACTICE.—*Objections to Evidence.—Must be Specific.*—Objections to the admission of evidence, to be available on appeal, must be specific.

CONTRACT.—*Nudum Pactum.—No Liability for Non-Performance.*—There is no liability for failing to perform a *nudum pactum.*

SAME.—*Bank.—Paying Money to Impostor.—Liability.*—M., a real estate agent in Indianapolis, received a letter from Franklin, purporting to be signed by L., who owned certain lots in the former city, and offering to put them in his hands for sale. A correspondence ensued, resulting in M. agreeing to buy the lots. He thereupon caused his bankers to telegraph to the Franklin Bank asking if L. was an honorable man and good for his contracts, but making no inquiry as to the identity of the man claiming to be L., nor was any inquiry of that kind afterwards made. The Franklin Bank answered that it did not know L. On the next day a stranger entered the latter bank, said his name was L., and that he was expecting a deed for him to sign from M.'s bankers in Indianapolis, and the latter were notified. The deed was sent to the Franklin Bank, executed by the person claiming to be L., the consideration paid him

under instructions from M.'s bankers, the deed sent to them, and their account charged with the amount, and they charged the same to M.'s account. It was afterwards disclosed that the man personating L. was an impostor, and the deed a forgery.

*Held*, that the Franklin Bank had a right to assume that M. knew with whom he was dealing, and as it acted according to instructions and paid the money to the person to whom it was directed to pay it, there is no liability on its part.

From the Shelby Circuit Court.

*F. Winter*, for appellant.

*G. M. Overstreet* and *A. B. Hunter*, for appellee.

BERKSHIRE, J.—This is an action to recover a sum of money which the appellant claims is justly due him from the appellee.

From the examination which we have made of the complaint we are inclined to the opinion that it does not state a cause of action, for the following reasons: 1. If fraud is to be regarded as the gravamen of the action, the facts alleged do not constitute a fraud. 2. If negligence is to be regarded as the foundation of the action, there is no negation of contributory negligence alleged. 3. If the action is to be regarded as resting on a breach of contract, no consideration is alleged. When the action counts upon a contract which rests in parol, before the plaintiff can recover he, must allege and prove a consideration. *Higham* v. *Harris*, 108 Ind. 246; *Wheeler* v. *Hawkins*, 101 Ind. 486.

The theory of the action seems to be the breach of a parol contract. Unless the appellee undertook to perform, as charged in the complaint, for a consideration of value, we are inclined to the opinion that the appellant must ground his action upon negligence or fraud. But we need not pursue the complaint further, as no question as to its sufficiency is presented by this appeal.

The answer of the appellant was but a general denial; the case was tried by the court, and a special finding made, the law being found favorably to the appellee; the appellant filed

a motion for a new trial, which was overruled by the court, and, over an exception, judgment was rendered for the appellee. The errors assigned are two in number: 1. The court erred in overruling the motion for a new trial. 2. The court erred in its conclusions of law.

There are three reasons assigned for a new trial: 1. The court erred in receiving and excluding certain evidence. 2. The finding made by the court is not sustained by sufficient evidence. 3. The finding is contrary to law. The action of the court in excluding evidence is not discussed by counsel for the appellant; the first reason therefore is waived that far.

There are five questions and answers, to which the appellant objected, embraced in the first reason assigned in the motion for a new trial. The objections are not available in this court, for the reason that they are not sufficiently specific and definite.

The first objection is that there is no pleading authorizing the evidence, and that it is irrelevant, immaterial and incompetent. The next two are that the evidence is incompetent, irrelevant and immaterial, and the last two are that the evidence is incompetent, irrelevant and immaterial under the issues. *Ohio, etc., R. W. Co.* v. *Walker,* 113 Ind. 196, and cases cited; *McKinsey* v. *McKee,* 109 Ind. 209, and cases cited. But we think the testimony was competent as a part of the transaction, unless it be the answer to the first question, which may have been objectionable as being merely hearsay; but, if so, it was wholly immaterial, and could have had no controlling effect in the result of the trial, for it otherwise appears in evidence, if that is a fact of any importance, that the certificate of deposit was not honored until word was received from Fletcher & Co. that the deed was all right.

There is no disagreement in the evidence, except as to two facts, and the court below having found as to these, its finding is conclusive upon this court. The finding of the court is as follows, in substance:

The appellee was a banking corporation doing business at Franklin, Indiana; one Jonathan L. Lord was a citizen of Rush county, Indiana, and the owner of lots 11 and 12 in in Strong's subdivision of lot 17, in Johnson's addition to Indianapolis. On the 27th of November, 1883, the appellant, who resided in Indianapolis, received by mail from Franklin a letter purporting to be signed by Jonathan L. Lord, referring to the said lots, and proposing to place them in the appellant's hands for sale, he being a real estate agent; thereupon a correspondence sprang up between the appellant and the writer of the letter—the appellant supposing that the writer was Jonathan L. Lord, the owner of the lots—which resulted in an agreement for the conveyance of the lots to the appellant for the sum of $800. At this point, and on December 1st, 1883, the appellant requested Fletcher & Co., his bankers at Indianapolis, to send to the appellee the following telegram:

"INDIANAPOLIS, IND., Dec. 1st, 1883.

" R. T. Overstreet, President, Franklin, Indiana:

" Is John L. Lord an honorable man and good for his contracts.                    S. A. FLETCHER & Co."

The appellee received this telegram on December 2d, and immediately answered:

"FRANKLIN, IND., Dec. 2d, 1883.

" S. A. Fletcher & Co., Indianapolis, Indiana:

" Don't know John L. Lord.

" R. T. OVERSTREET, President."

This answer was received on December 3d, and immediately communicated by Fletcher & Co. to the appellant. On Monday morning, December 3d, a man, an entire stranger to all the officers, came into the appellee's bank and said to the president and cashier that his name was Jonathan L. Lord; that he was expecting a deed to be sent down from Indianapolis and asked if it had come; he was informed that the mail had not come yet, to come in again after awhile. After the arrival of the mail he came again, but was informed that

no deed had come. Thereupon the appellee's cashier telephoned S. A. Fletcher & Co., at Indianapolis, as follows:

"A man is in the bank who says his name is Jonathan L. Lord, and that he has an arrangement with you by which you are to send a deed for him to sign."

After receiving this message Fletcher & Co. sent for the appellant and communicated it to him, and at his request answered the appellee by telephone that he would at once send the deed by mail.

The appellant at once prepared a deed to himself for the lots, to be executed by Jonathan L. Lord and wife for a consideration of $800, and handed the same to Fletcher & Co., together with his check for $800, and at his request, on said 3d day of December, they transmitted said deed to the appellee, enclosing the following letter with it:

"December 3d, 1883.

"*R. T. Overstreet, Pres.*—We enclose deed for Mr. and Mrs. Lord to sign and acknowledge, and when done please pay them $800 and charge our account. If Lord claims expense of telegram and notary fees for acknowledgment, in addition to the $800, pay them and charge our account, and advise us. When the deed is executed and money paid please send it to us. Yours respty.,

"S. A. FLETCHER & Co."

On the morning of December 4th the letter and deed were received, and soon after the man who had inquired for the deed came in and took it away, but shortly came back with it (it purporting to have been signed by Jonathan L. Lord, and acknowledged before a notary public) and delivered it to the appellee, and thereupon the appellee placed to his credit the sum of $800, and executed and delivered to him the following statement:

"Deposited with the Franklin Bank, Franklin, Indiana, by Jonathan L. Lord, December 4th, 1883, — dollars — cents currency. Check —, $799.20, payable on acceptance of deed by A. Metzger, of Indianapolis."

This was done without identification or other knowledge of the party than his own statements. Immediately thereafter appellee transmitted the deed to Fletcher & Co., together with the following letter:

" FRANKLIN, IND., Dec. 4th, 1883.

*"S. A. Fletcher & Co., Indianapolis, Ind.:*

" We enclose herewith a deed executed by Jonathan L. Lord. Mr. Lord is an unmarried man, his wife having died last September. We have charged your account with $800.

" Yours respty., . E. C. MILLER, *Cash'r."*

The statement in the letter as to Lord's wife being dead rested entirely upon what the person said who was personating Lord. Fletcher & Co. received the letter and deed and delivered the deed to the appellant, who accepted it, believing from what was stated in the letter that Lord's wife was dead.

On the 5th of December this same man, who claimed to be Jonathan L. Lord, came to the appellee's bank, and at his instance the appellee, by telephone, inquired of Fletcher & Co. if they had received the deed, and if it was all right, and whether it should pay the money? Fletcher & Co. answered that it was all right, and that they had given the appellee credit for $800, and thereupon this man, claiming to be Lord, checked from the appellee's bank the sum of $800. At the end of the month of December, Fletcher & Co. settled with the appellee, and paid the said sum of $800. The appellant also settled his account with Fletcher & Co., in which he was charged with the said sum of $800, and gave them credit for it. The man who presented himself to the appellee as Jonathan L. Lord, and who signed and executed the said deed by that name, was not Jonathan L. Lord, and was not the owner of said lots, and had no right or authority to sell or convey the same, or to receive the said money therefor, and on his part the whole transaction was a fraud and forgery.

The real Jonathan L. Lord was, at the time of said trans-

action, a married man and had no knowledge of said transaction and received no part of said money.

The forgery of said deed was not discovered until February, 1884, and the appellant then, on the demand of said Lord, for the purpose of removing the cloud that had been cast upon his title to said lots, executed to him a quitclaim deed for the same.

The court came to the conclusion that the law was with the appellee, for the reason that both parties had been guilty of negligence. We are satisfied that the court reached the proper conclusion, whether it gave the proper reason therefor or not.

It nowhere appears in the special finding that the appellee was to receive compensation for its services. The conclusion must be, therefore, that it was not, and if not, then the undertaking of the appellee was a *nudum pactum*, and there is no liability for a failure to perform the contract as charged in the complaint. But did not the appellee transact the business intrusted to it in accordance with the instructions received, and pay the money to the person that the appellant intended should receive it? We are of the opinion that it did. The appellee assumed and had the right to assume that the appellant knew Jonathan L. Lord. The first telegram that passed between the parties indicated that—" Is John L. Lord an honorable man and good for his contracts." No question of identity was inquired for, but traits of character. But the appellee's telegram in reply was sufficient to put the appellant upon inquiry as to the fact of identity, but it seems not to have done so. The next communication that passes is a telephonic message from the appellee to Fletcher & Co.: "A man is in the bank who says his name is Jonathan L. Lord, and that he has an arrangement with you by which you are to send a deed for him to sign," and still no inquiry came from the appellant as to the identity of the man, but instead, a communication by telephone was returned, stating that the deed would be forwarded by mail at once ; the deed

was forwarded, together with instructions for the appellee to pay the consideration when Lord and wife executed the deed.

We think, under the circumstances, it would have been but an act of presumption on the part of the appellee to have supposed for a moment that the appellant did not know the man with whom he was negotiating. But whether so or not, the appellant was bound to know that he was dealing with the right man, and can throw the responsibility on no one else, unless he engaged the services of some one else to identify the person with whom he was negotiating.

The following is the statement of the case of *Western Union Tel. Co.* v. *Meyer*, 61 Ala. 158 (32 Am. Rep. 1): The action was brought to recover money paid defendant for a telegraphic money-order. Meyer received, through defendant's telegraphic line, a dispatch from Cincinnati, signed "Max Reis," supposed to be from his nephew, who was then on his way from New York to Selma, to the effect that he had lost his ticket and money between Cincinnati and Pittsburgh, and desired plaintiff to send him at the latter place forty dollars by telegraph immediately. This was done, the defendant giving the following receipt: "Received from Joseph Meyer forty dollars, to be paid to Max Reis at Cincinnati, Ohio." The defendant, on the same day, handed over the money in Cincinnati to the person who sent the dispatch to the plaintiff, who was not known to the company's agent or identified as a person whose name was "Max Reis," and who proved to be an impostor, and not the plaintiff's nephew. MANNING, J., delivering the opinion, said : "My brothers think that where there is nothing to create suspicion in the minds of the company's agents, it is for the party on whom the demand is made, to ascertain for himself whether he who makes it is the person he professes to be, and that the company has no right to refuse payment of the money to him in reply to whose message the order to pay it was sent. I was strongly inclined to the other conclusion. But the case is a new one, and I defer to their opinion."

Metzger *v.* The Franklin Bank.

That was a much stronger case than the one at bar in favor of the plaintiff. There was an undertaking on the part of the defendant, for a valuable consideration, to deliver the money to Max Reis. The following is the opinion of the court, in *Dunbar* v. *Boston, etc., R. R. Co.*, 110 Mass. 26, pronounced by CHAPMAN, C. J.: "The plaintiff sold the gin and whisky which are the subject of this action to a person calling himself John H. Young of Providence, and delivered them to the defendants to be carried to the same person in Providence by the same name. As he was the only person in Providence who bore that name, there was no other individual to whom the defendants could deliver the property. A delivery to him would be a performance of the contract. The fact that he was known to the delivery clerk as John F. Gorman, made it necessary for him to conceal from the clerk the fictitious name, and to pretend that he was acting as an agent or servant of John H. Young. He was thus enabled to obtain the property, but by means of this deceit, the property reached the person to whom the plaintiff sold and consigned it. Thus the contract of the defendants was performed in its spirit and letter, and the plaintiff has no cause of action against them."

We take the following extract from the opinion of MORTON, C. J., in *Samuel* v. *Cheney*, 135 Mass. 278: "The plaintiff contends that he intended to send the goods to Arthur Swannick. It is equally true that he intended to send them to the person with whom he was in correspondence. We think the more correct statement is, that he intended to send them to the man who ordered and agreed to pay for them, supposing erroneously that he was Arthur Swannick. It seems to us that the defendant, in answer to the plaintiff's claim, may well say, we have delivered the goods entrusted to us according to your directions, to the man to whom you sent them, and who, as we were induced to believe by your acts in dealing with him, was the man to whom you intended to

send them; we are guilty of no fault or negligence." *Alexander* v. *Swackhamer*, 105 Ind. 81.

There can be no doubt but that the money which the appellee paid over to the man who was personating Jonathan L. Lord was paid to the man to whom the appellee was directed to pay it, and the man for whose benefit the appellant drew his check upon Fletcher & Co.

This is a very different case, and different principles rule, than in the case of the payment of a check to the wrong person by a bank in due course of business.

We have examined the evidence, and find that it supports the finding of the court, and that, in no view that can be taken of the case, is the judgment of the court wrong.

The judgment is affirmed, with costs.

