[No. 7930]

## BOATSMAN, ADMINISTRATOR, v. STOCKMEN'S NATIONAL BANK.

FORGERY—*Recovery of Money Paid Upon*—The general rule is that the banker who pays money upon a forgery suffers the loss.   He will not be permitted to charge the amount to the account of the depositor whose check the forgery purports to be.   But where the depositor has negligently contributed to the deception a contrary rule applies.

Murphy, a resident of Utah, owned certain lands situated near Morrill, Nebraska, the residence of Nichols, plaintiff's intestate.   Warren, assuming the name of Murphy, wrote Nichols offering the lands for sale, and after some correspondence by letter and telegram, bargained the same to him.   Warren then wrote directing Nichols to send a deed to the defendant bank at Brush, Colorado, for execution, with a draft to pay for the land, requesting that the draft be made payable to bearer to avoid identification, and stating that the sale was a great sacrifice to him and must be consummated immediately.   Nichols prepared a deed and sent it to Murphy at Brush, Colorado, which Warren received, executed it as Murphy, and presented it to the defendant bank for payment.   The defendant bank communicated by telegram with the bank at Morrill, Nebraska, and received reply ordering payment for deed "if regular."   Upon this direction the defendant bank accepted the deed executed by Warren, in the name of Murphy, and paid the money to him.   The forgery being

discovered, Boatsman, as administrator of the estate of Nichols, brought action to charge the defendant bank with the amount paid upon the forgery. *Held*, that the negligence of Nichols in dealing in this manner with a stranger, arming him with letters and telegrams which might be exhibited as evidence of his identity, so increased the ordinary risk attending such transactions that the cause was taken out of the general rule; that the bank was justified, under the circumstances, in paying the money to the person presenting the deed duly acknowledged.

*Held* further, that Nichols intended that payment should be made to the person with whom he had corresponded, so that the bank had carried out his actual intention and followed his directions.*

*Error to Morgan District Court.*—Hon. H. P. BURKE, Judge.

Messrs. TAYLOR & PENDELL, for plaintiff in error.

Mr. ARTHUR PONSFORD and Mr. CHARLES F. CARNINE, for defendant in error.

Mr. JUSTICE BAILEY delivered the opinion of the court:

Carroll Nichols, a real estate dealer at the town of Morrill, Scotts Bluff county, Nebraska, died in April, 1911. John Boatsman, as administrator of his estate, brought this action in the district court of Morgan county against the Stockmen's National Bank of Brush, Colorado, by which it is sought to recover $1,500.00 and interest, alleged to have been wrongfully paid out by it, on account of Nichols, to one H. M. Warren, on a forged deed. The quarter section of land involved in the controversy is situate in Scotts Bluff county, Nebraska, and is owned by Charles E. Murphy, a resident of Utah. Warren was also a real estate dealer, residing at Mitchell, Nebraska, near Morrill. Nichols knew Warren, but did not know Murphy. On May 23rd, 1910, Warren wrote Nichols a letter in the name of Murphy, proposing a quick sale of the land and soliciting an offer therefor. The

---

*Syllabus by Bailey, J.

name of Murphy was wrongfully used, without his knowledge or consent, throughout the whole transaction. In answer to that letter Nichols telegraphed an offer of $2,500.00 for the land. Warren acknowledged receipt of the offer in a letter dated May 25th, 1910. Four days later Warren again wrote Nichols, directing him to send the deed to the defendant bank at Brush, Colorado, for execution, with draft to pay for the land. The deed, naming Boatsman as grantee, who loaned Nichols the money to buy, was accordingly mailed by Nichols to Murphy at Brush, Colorado, which Warren received, and thereupon executed, as Murphy, acknowledged the same before a notary public, presented it to the defendant bank, and requested payment of the $2,500.00. Finding no money at the bank, he requested it to telegraph to the Farmers & Merchants Bank of Morrill, Nebraska, with whom Nichols did business, with the following result:

"Brush, Colo.   6-1st '10
Farmers and Merchants Bank
        Morrill Nebraska
    Deed Chas Murphy to John Boatsman duly executed and in our hand  Murphy wants money wired to this bank at once or will call deal off.
                          Stockmens Natl. Bank."

"June 2, 1910
Stockmens National Bank,
        Brush, Colo.
    If warranty deed is regular, pay Charles Murphy twenty-five hundred dollars. We remit. Register deed to us.
                    Farmers & Merchants Bank
                            Morrill, Nebraska."

The defendant bank thereupon paid Warren $1,500.00 cash and a $1,000.00 draft on the City National

Bank of Omaha, Nebraska, and took the deed for delivery. The following September the imposition was discovered, and payment stopped on the draft. Soon thereafter Warren was tried, convicted and sentenced to a term in the Colorado penitentiary, on a plea of guilty to a charge of forgery.

Nichols demanded of the defendant bank the return of the $1,500.00 paid to Warren believing him to be Murphy. The bank refused payment and this suit followed. A demurrer to the complaint was interposed and sustained upon the ground that it stated no cause of action. Plaintiff elected to stand by his case as made, the action was dismissed, and he brings the case here to review such judgment.

The gist of the complaint is that the defendant bank negligently paid the impostor $1,500.00. In such cases the controlling inquiry is whether the drawer, by failure to use ordinary diligence to avert a loss, has so increased the risk and responsibility of the drawee as to take the case out of the general rule of liability for payment of money on a forged instrument. When the facts show that such is the case, it is uniformly held that the drawer must bear the loss.

It will be presumed that the defendant bank had full knowledge of all dealings between Nichols and Warren, pretending to be Murphy, which the complaint discloses. The deception was complete as to both the defendant bank and Nichols. Warren appeared at the bank with the deed which Nichols had prepared and forwarded, purporting to be duly executed by Charles E. Murphy before a notary public. The defendant bank telegraphed the Nebraska bank, with whom Nichols did business, that Charles Murphy had presented the deed and awaited immediate remittance, or the deal would fail. Nichols forthwith sent the money, and the defendant bank there-

upon accepted the deed and made payment. By the letter of May 29th, 1910, Warren requested Nichols to make the draft payable to bearer to avoid identification, as he was not known in that community, and stated that he was very anxious to get the matter off his hands, that the acceptance of the price offered was a great sacrifice on his part and must be acted upon immediately if at all. This is substantially a reiteration in these particulars of the letter of May 25th, four days earlier. Such statement might well have aroused the suspicion of an ordinary business man in dealing with a stranger and put him on inquiry. But the attitude of Nichols is shown by the fact that he acted in harmony with every suggestion of Warren. The record fails to show that he took any precaution for his own protection against this stranger. Evidently the price asked was low, and Nichols was so thoroughly interested in making an advantageous deal that he completely lost sight of the possibility of deception. By mailing the deed to the stranger for execution, he not only placed in his hands an instrument peculiarly well adapted to perpetrate a fraud upon the bank, but so increased its ordinary risk as to take the case out of the general rule applicable in cases of payment of money on forged instruments. The bank was fully justified, in the circumstances of this case, in paying the money to the person presenting the deed duly acknowledged, and it discharged every duty imposed upon it by law to escape liability. The law will not permit a drawer who has, through lack of diligence, been misled into making a direction for the payment of money on a forged deed, to shift the burden of loss by placing an undue and extraordinary responsibility upon the drawee bank. The representative of Nichols is here contending that such extraordinary risk attaches to the bank, notwithstanding the total failure of Nichols to use even the most ordinary means to prevent deception. The rule of

law which he claims is applicable does not reach the present situation. Generally on payment of money on a forged instrument, in the absence of negligence on the part of the depositor whose check it purports to be, the bank cannot charge the amount to his account. 5 Cyc. 544. But where there is a failure on the part of the depositor to use diligence to avert a loss, and such we think may fairly be said to be the fact in the present dispute, a different rule applies. The rule is stated in the case of *Land Title & Trust Co. v. Northwestern National Bank,* 196 Pa. 230, 46 Atl. 420, 50 L. R. A. 75, 79 Am. St. 717, as follows:

"The reason of the rule that when a bank pays a depositor's check on a forged indorsement, or a raised check, it is held to have paid it out of its own funds, and cannot charge the payment to the depositor's account, is that there is an implied agreement by the bank with its depositor that it will not disburse the money standing to his credit, except on his order. * * * It is confined to cases in which the depositor has done nothing to increase the risk of the bank. It should not apply when the check is issued to one whom the drawer intends to designate as the payee: First. Because in such a case the risk is not the ordinary risk assumed by the bank in its implied contract with its depositor, but a largely-increased risk, as it follows that a check thus fraudulently obtained will be fraudulently used. The bank is deprived of the protection afforded by the fact that a *bona fide* holder of a check will exercise care to preserve it from loss or theft, which are the ordinary risks. There is thrown upon the bank the risk of antecedent fraud practised upon the drawer of the check, of which it has neither knowledge nor means of knowledge." *Iron City Nat. Bank v. Fort Pitt Nat. Bank,* 159 Pa. 47, 28 Atl. 195, 23 L. R. A. 615; *Bank of England v. Vagliano Bros.* (1891), A. C. 107.

And in *Murphy v. Metropolitan National Bank,* 191 Mass. 159, 77 N. E. 693, 114 Am. St. 595, citing numerous authorities supporting it, this is said:

"The ordinary rule is well established that a banker, on whom a check is drawn, must ascertain at his peril the identity of the person named in it as payee. It is only when he is misled by some negligence or other fault of the drawer, that he can set up his own mistake in this particular against the drawer."

Under the facts here disclosed the way was made plain and easy for the perpetration of a fraud upon the bank through lack of care on the part of Nichols in sending a deed for execution to a stranger, and in arming him with letters and telegrams which, together with the deed, could be presented to the bank as a means of identification, so that the purchase price would be paid to him, a perfectly natural and proper thing, under such circumstances, for the bank to do.

The matter is thus reduced to the simple proposition that where two innocent parties have both been deceived, the loss must be borne by the one who primarily made such loss possible. The vital mistake was made by Nichols in dealing with Warren, believing him to be Murphy. This was the fundamental and primary error, the responsibility for which rests solely upon Nichols. It was this initial error which led directly to the loss. In *Crippen, Lawrence & Company v. American National Bank,* 51 Mo. App. 508, it was said:

"It has been ruled, too, that when both parties to a transaction are innocent, and the loss must fall upon one, it should be upon the one who in law most essentially facilitated the fraud. *Stout v. Benoist,* 39 Mo. 281 [90 Am. Dec. 466]. And so it has been held in respect to two persons equally innocent, where one is bound to know and

act upon his own knowledge, and the other has no means
of knowledge, there is no reason for burdening the latter
with the loss in exoneration of the former, or, if both
are equally innocent and equally ignorant, the loss should
remain where the chances of business have placed it.
*United States v. Bank, supra* (45 Fed. Rep. 163); *Bank v.
Bank,* 17 Mass. 33; *Bank v. Bank,* 10 Wheat. 333 [6 L. Ed.
334]; *Price v. Neal,* 3 Burrows 1355. In the last-cited
case, Lord Mansfield used this language: 'It is a mis-
fortune which has happened without the defendant's
fault or neglect. If there was no neglect in the plaintiff,
yet there is no reason to throw off the loss from one inno-
cent man upon another innocent man. But in this case,
if there was any fault or negligence in anyone, it cer-
tainly was in the plaintiff, and not in the defendant.'
*  *  *  If the plaintiffs, or their agents for them, before
closing the loan, had exercised the precaution dictated
by ordinary prudence in such cases by instituting an
inquiry as to whether the person who had applied for the
loan under the name of P. W. Pool was the Pool who
really owned the land, they would not have fallen the
easy victim of the swindler that they did. It was an easy
matter to have required of the applicant some satisfac-
tory proof of his identity.''

Moreover, under the facts disclosed, it appears that
the money was paid to the very person to whom Nichols
actually intended it should be, the one through whose
agency the transaction was brought about. It is idle to
say, as does plaintiff, that Nichols never in fact dealt
with Warren, the imposter; this contention only goes to
show that the deception was complete. It would be to
disregard substantial facts to say that the actual intent
of Nichols, because he mistook his physical payee, War-
ren, for his mental payee, Murphy, was not met by pay-
ment to the former. Nichols did not deal merely with
the name ''Charles E. Murphy,'' but rather with the

physical entity, the human agency indicated by that name, the one who quickened him to action. The true Charles Murphy was unknown to Nichols, and he naturally had in mind only a man with this land to sell, the person with whom he corresponded, Warren. He meant the money to be paid, and it was paid, to that identical person, and the estate of Nichols must therefore, as against the bank, bear the loss, for his actual intent was in fact carried out. Names are used as one method only of indicating identity of person, and are in no sense conclusive on this proposition. *Meyer v. Indiana Nat. Bank*, 27 Ind. App. 354, 61 N. E. 596. In this connection, under a similar state of facts, in *Land Title & Trust Company v. Northwestern National Bank, supra,* it was said:

"The facts of this case do not, we think, bring it within the rule that a bank paying a check to order on a forged indorsement may not charge the payment to the drawer's account, for the reason that the check was issued to the person whom the drawer intended to designate as the payee. If not within the rule, the plaintiff has no standing whatever. It is a perverted statement of the whole transaction to say that the check was intended for Dr. Herman S. Bissey, and that he alone was entitled to receive payment. Dr. Bissey had no more right to the check than had Ashley. He had given nothing for it. No one was entitled to it, and, had the truth been known, it would not have been issued. Under the supposed facts on which the trust company acted, Ashley was the owner of the property, he had executed a mortgage, and was entitled to payment. The clear intention was to pay him, although there was a mistake as to the facts on which the intention was based. Nor is the solution of the question involved to be sought in determining whether the bank was negligent in dealing with its depositor, Rogers. * * * The officers of the trust company, of course, had no doubt. They acted in entire good faith,

and, it may be conceded, with ordinary prudence; but the loss was occasioned by their error, and there is no reason, legal or equitable, why it should be shifted to another.''

The case of *Emporia National Bank v. Shotwell*, 35 Kan. 360, 11 Pac. 141, 57 Am. Rep. 171, quoted by both parties, discloses facts closely analogous to those of the present case. It was there announced:

''The vital point in this case is, that Shotwell intended the draft to be sent to the party executing the notes and mortgages, and intended it to be paid to the person to whom he sent it and whom he designated by the name of Daniel Guernsey, because that was the name which he assumed in executing the notes and mortgages; and therefore the National Bank is protected in paying the draft to the very person who Shotwell intended to designate by the name of Daniel Guernsey.''

In the case of *Samuel v. Cheney*, 135 Mass. 278, 46 Am. Rep. 467, an impostor opened a place of business in Saratoga Springs, assumed the name of a responsible merchant engaged in business there, and then began correspondence under that name with plaintiff, as a result of which a quantity of cigars was ordered from the latter, who, after taking the precaution to investigate and satisfy himself of the financial responsibility of the one whose name was signed to the order, shipped him the goods and wrote him a letter stating that they had been shipped.. The defendant carrier delivered the cigars to the imposter; soon after the latter disappeared, and the plaintiff brought suit against the carrier to recover the value of the goods. The court denied the relief asked, and said:

''Suppose, upon the arrival of the goods in Saratoga Springs, the imposter had appeared and claimed them; to the demand of the defendant upon him to show

that he was the man to whom they were sent, he replies, 'True, there is another A. Swannick here, but he has nothing to do with this matter; I am the one who ordered and purchased the goods; here is the bill of the goods, and here is the letter notifying me of their consignment to me, addressed to me at my P. O. box 1595.' The defendant would be justified in delivering the goods to him, whether he was the owner or not, because he had ascertained that he was the person to whom the plaintiff had sent them. It is true the defendant did not make these inquiries in detail; but if, by a rapid judgment, often necessary in carrying on a large business, he became correctly satisfied that the man to whom he made the delivery was the man to whom the plaintiff sent the goods, his rights and liabilities are the same as if he had pursued the inquiry more minutely.

"The plaintiff contends that he intended to send the goods to Arthur Swannick. It is equally true that he intended to send them to the person with whom he was in correspondence. We think the more correct statement is, that he intended to send them to the man who ordered and agreed to pay for them, supposing erroneously that he was Arthur Swannick. It seems to us that the defendant, in answer to the plaintiff's claim, may well say, we have delivered the goods entrusted to us according to your directions, to the man to whom you sent them, and who, as we were induced to believe by your acts in dealing with him, was the man to whom you intended to send them; we are guilty of no fault or negligence."

The entire chain of circumstances shows that it was the intent of Nichols that the man, whether his name was Warren or Murphy, with whom he had been negotiating for the purchase of the land, was the person to whom the purchase price, upon the conclusion of the deal, should

be paid. This intention is first manifest when in reply to the letter offering the land for sale, Nichols telegraphed specifying the price which he was willing to pay; it continued when the second and third letters came from Warren and Nichols prepared and forwarded the deed for execution, pursuant to Warren's instructions, and in fact throughout the entire correspondence, by means of which the deal was finally consummated and the purchase price paid.

The complaint, in minute detail, sets forth substantially all the facts surrounding this entire transaction, and clearly demonstrates that no liability attaches to the bank. The demurrer was therefore properly sustained and the cause dismissed.

These further authorities support our conclusion: *U. S. National Bank v. Nat. Exchange Bank* (C. C.) 45 Fed. 163; *Levy v. Bank of America,* 24 La. Ann. 220, 13 Am. Rep. 124; *Karoly Electrical Constr. Co. v. Globe Sav. Bank,* 64 Ill. App. 225, 230; *Meridian Nat. Bank v. First Nat. Bank,* 7 Ind. App. 322, 33 N. E. 247, 34 N. E. 608, 52 Am. St. Rep. 450; *Smith v. Mechanics' & T. Bank,* 6 La. Ann. 610; *Iron City Nat. Bank v. Ft. Pitt Nat. Bank,* 159 Pa. 47, 28 Atl. 195, 23 L. R. A. 615; *Robertson v. Coleman,* 141 Mass. 231, 4 N. E. 619, 55 Am. Rep. 471; *Dunbar v. Boston, etc., R. R. Corp.,* 110 Mass. 26, 14 Am. Rep. 576; *Alexander v. Swackhamer,* 105 Ind. 81, 4 N. E. 433, 5 N. E. 908, 55 Am. Rep. 180; *Metzger v. Franklin Bank,* 119 Ind. 359, 21 N. E. 973.

*Judgment affirmed.*

CHIEF JUSTICE MUSSER and Mr. JUSTICE WHITE concur.