THOMAS DANA & others *vs.* NATIONAL BANK OF THE REPUBLIC.

Suffolk.    Nov. 14, 1881. — Jan. 5, 1882.    MORTON, J., absent.    FIELD, J., did not sit.

A depositor in a bank drew his check upon the bank for a certain amount payable to the order of a person named. The clerk of the depositor erased the name of the payee and obtained the money on the check from the bank. On the first of the following month the bank returned this check among others to the depositor and sent him a monthly statement which included this check as paid; and after another monthly statement the depositor drew from the bank the balance remaining according to these statements; and made no objection to the payment of the check in question until twenty-three months after such payment. *Held*, in an action by the depositor against the bank to recover the amount of the check, that the defendant was not entitled to a ruling, as matter of law, that if the plaintiff did not, after a reasonable opportunity to examine the checks returned, object to the payment of the check in question, he would be presumed to have ratified it; but that the question of ratification was for the jury; that the plaintiff was bound to use due diligence in discovering the forgery, and was affected by the knowledge which his clerk had, who committed the forgery and whose duty it was to examine the checks returned by the bank.

On the issue whether a depositor in a bank has ratified the payment by the bank of a check, drawn payable to the order of a person named and fraudulently altered by erasing the name of the payee, evidence that the bank had previously paid checks of the depositor showing upon their face alterations in the name of the payee is inadmissible.

CONTRACT for money had and received, to recover the amount of a check drawn by the plaintiffs on the defendant, payable to the order of the Revere Sugar Refinery, and paid by the defendant without the order of the payee. At the trial in the Superior Court, before *Putnam*, J., the jury found for the plaintiffs, and the defendant alleged exceptions, which appear in the opinion.

*H. D. Hyde & J. Fox*, for the defendant.

*E. O. Shepard*, for the plaintiffs.

ALLEN, J. The defendant received moneys from the plaintiffs under an agreement to pay on demand as called for by the plaintiffs' checks. The plaintiffs drew a check payable to the order of the Revere Sugar Refinery, which was subsequently fraudulently altered, by erasing the name of the payee, so as to be payable to bearer, and the defendant paid the money upon it to Piper, the plaintiffs' clerk, who was the fraudulent bearer. This was no payment to the plaintiffs, and they can recover the money, unless the defendant shows that the plaintiffs had given them reason to believe that Piper was authorized to receive the payment, or unless the plaintiffs have by their subsequent conduct so far ratified the payment as to be bound by it. It is upon the latter point only that exceptions are before us to the refusal to give instructions, and to instructions given.

By the course of dealing between the parties, the defendant kept the account of all moneys received and paid out on checks, and on the first of each month made a detailed statement of all deposits and payments during the preceding month, and delivered it, with the checks and deposit book, to the plaintiffs. The payment in question was made on November 20, 1874, and on the first of the next month the statement with the book and checks, including the check in question, was delivered to the plaintiffs. On January 1, another like monthly statement was made, and during that month the plaintiffs by check drew out their entire balance, and the account was closed. The plaintiffs made no objection to this item of the account until October 1876.

The instruction asked for by the defendant, to the effect that, if the plaintiffs did not, after a reasonable opportunity to examine the checks, object to the payment of the check in question, they would be presumed to have ratified and adopted it,

was rightly refused. Whatever effect those facts might have as evidence, it is clear that they would raise no presumption of law that the plaintiffs ratified and adopted the payment and check.

But the instructions given are open to objection. They were to the effect, and the jury must have understood from them, that, unless the plaintiffs had actual personal knowledge of the mistake in the monthly statements, all evidence in reference to them was to be disregarded; and, as it was not contended that there was any evidence of such knowledge, the effect was that there was no evidence of ratification left to the jury. We think that the evidence in respect to the monthly statements, and other evidence bearing upon them, should have been submitted to the jury upon the question of implied ratification of the payment to Piper.

Whether the rule given to the jury properly applies to a mistake in the statement of an account only, which is for the advantage of the party making it, and by which his condition is not changed, it is not necessary to consider. When the error in an account is not a mere mistake in statement, but is the statement of a mistake of fact, — of some act of a party which is not for his advantage, and by which his condition is changed, — a different rule will apply. The instructions do not refer to any negligence of the defendant. They assume the case of a check signed by the plaintiffs and apparently genuine, taken in good faith by mistake. The mistake was in the payment of the money upon an altered check, believed to be genuine; it was not for the advantage of the defendant, and its condition was changed by it. It was in the course of dealings between the parties in relation to which each owed duties to the other. The facts concerning the monthly statements are facts in the dealings between the parties in relation to the check and the payment, which the defendant offers as evidence upon the question whether the plaintiffs have so failed in their duty to the defendant as to be deemed to have adopted the check and ratified the payment of it.

The plaintiffs owed to the defendant the duty of exercising due diligence to give it information that the payment was unauthorized; and this included not only due diligence in giving notice after knowledge of the forgery, but also due diligence in

discovering it.   If the plaintiffs knew of the mistake, or if they had that notice of it which consists in the knowledge of facts which, by the exercise of due care and diligence will disclose it, they failed in their duty; and adoption of the check and ratification of the payment will be implied.   They cannot now require the defendant to correct a mistake to its injury, from which it might have protected itself but for the negligence of the plaintiffs.   Whether the plaintiffs were required, in the exercise of due diligence, to read the monthly statements or to examine the checks, and how careful an examination they were bound to make, and what inferences are to be drawn, depend upon the nature and course of dealing between the parties, and the particular circumstances under which the statements and checks were delivered to them.   The facts that the statements and checks for November and December were submitted to the plaintiffs, and that they closed the account in January following according to those statements, are to be taken in connection with other evidence in the case.   There was evidence that the plaintiffs did examine the statements and checks so far as to see that the checks returned corresponded with the amounts in the stub of the check-book.   Whether this was all the examination required, we need not consider.   The plaintiffs made that examination, and are affected with the knowedge it would give, though it was made by Piper.   He was their agent for that purpose. The check in question was dated November 20, and was drawn to the order of the Revere Sugar Refinery, to pay a bill due to the payee, payable either November 20 or December 10, at the option of the plaintiffs, who rarely allowed such bills to run over ten days.   On December 10, a duplicate of the same bill was presented to the plaintiffs, and paid by a check on another bank.   Whatever inference as to knowledge of this double payment and the misuse of the check of November 20 may be drawn from the knowledge the plaintiffs may have had of their own accounts with the Revere Sugar Refinery, and from the examination of the check-book, is not to be affected by the fact that the examination was made by Piper.

The defendant offered to prove that in the year 1874, before November, four checks of the plaintiffs, with blank payees, had been presented to them by Piper, and paid to him; that when

those checks were returned Piper destroyed them, and obtained from the plaintiffs other checks of the same amounts payable to the order of the Standard Sugar Refinery, on which he forged the indorsements of the payee, and filed them away in place of those destroyed; the original checks having been obtained by Piper to pay false bills made out by him in the name of the Standard Sugar Refinery. If these facts were proved, the examination made by the plaintiffs might have shown that the checks returned did not correspond with the check-book. Whatever information it would give, the plaintiffs must be presumed to have had, because, although the examination was made by Piper, he did it as their agent, and to that extent his knowledge was their knowledge, and they are bound by it and whatever it is notice of. If the examinations made by Piper as agent for the plaintiffs, and the information which came to him within the scope of his agency, were sufficient to have given him notice of the forgery of the check of November 20, it does not lie in the mouth of the plaintiffs to say that he did not acquire that knowledge as their agent, so as to affect them with it. If such examinations would have given them notice if made by an honest agent, they cannot affect ignorance because they were made by a dishonest agent, who had fraudulent knowledge of the fact.

The evidence offered by the defendant would show that the plaintiffs received the monthly statements in December and January, and closed their account in January, with such knowledge as would be inferred from the facts proved. Whether that was notice of the forgery, or would have called for further examination and led to the discovery of it, was a proper question for the jury. This evidence should have been admitted and submitted to the jury upon the question whether the mistake would have been discovered but for the negligence of the plaintiffs, or their agents, or the fraudulent conduct of Piper in regard to acts within the scope of his agency; and whether the examinations made by the plaintiffs or their agents were such as to lead to a discovery of the forgery and affect the plaintiffs with notice of it.

The other evidence offered by the defendant, that, in the course of two or three years preceding the transaction in question, the

plaintiffs had drawn on the defendants thirty-one checks with the name of the payee left blank, and that the defendant had paid twelve of the plaintiffs' checks showing upon their face alterations in the name of the payee, was properly excluded. This evidence had no tendency to show either authority in Piper, or a holding out by the plaintiffs to the defendant that he had authority. There was no question made as to the good faith or diligence of the defendant. The case against the defendant was put upon the ground that the payment was unauthorized, and, in the aspect in which the case appears in the exceptions, evidence of its good faith and freedom from negligence was immaterial. *Exceptions sustained.*