JAMES R. MURPHY *vs.* METROPOLITAN NATIONAL BANK.

Suffolk.   January 19, 22, 1906. — March 5, 1906.

Present: KNOWLTON, C. J., MORTON, LATHROP, HAMMOND, & SHELDON, JJ.

*Bank.   Bills and Notes.   Estoppel.*

If a bank pays a check of one of its depositors upon an indorsement forged by one falsely impersonating the payee and charges the amount to the account of the depositor, not having been misled by any negligence on his part, it is liable to him for the amount of the check.

In an action by the drawer of a check against a bank in which he had a deposit, for paying tbe check upon a forged indorsement and charging the amount to his account, it appeared that the plaintiff, deceived by an attorney at law falsely representing himself to be acting for B., agreed to lend to B. the amount of money represented by the check upon the note of B. secured by a mortgage on real estate of B., that he caused the title to the real estate to be examined and found it standing in the name of B. and accepted a note and mortgage purporting to be signed by B. and delivered the check to the attorney, that the plaintiff had no reason to doubt that B. was living and that the mortgage and note were genuine, whereas B. had died about nine months before the transaction, that the attorney had the check certified by the defendant, and by procuring a person falsely to impersonate B. presented the check to a trust company with a forged indorsement of B. and his own indorsement.   The trust company cashed the check and it was paid through the clearing house by the defendant and charged to the plaintiff's account.   At the beginning of the next month the check was returned to the plaintiff with his pass book and its payment appeared to be regular.   Two years afterwards the attorney who falsely had pretended to represent B. in the transaction absconded, and the plaintiff then discovered for the first time that the signatures of the mortgage and note and the indorsement of the check were forgeries, and then first learned of the death of B., the mortgage interest having been paid regularly up to that time.   The plaintiff testified that he notified the defendant that the signature of B. was not genuine on the very day that he discovered it, which was about the first of October.   The defendant's president testified that the defendant first received notice that the check was not indorsed properly late in the autumn of that year.   There was no evidence tending to show that the defendant suffered any loss from the failure of the plaintiff to notify it earlier than he did.   *Held,* that there was no evidence that the defendant was misled by any negligence on the part of the plaintiff, and, there being nothing to take the case out of the ordinary rule that a bank on which a check is drawn must ascertain at its peril the identity of the person named as payee, a verdict should be ordered for the plaintiff.

In an action against a bank by one of its depositors for paying upon a forged indorsement a check drawn by him and charging it to his account, the bank cannot defend on the ground that the plaintiff is estopped from recovery by his negligence in not sooner informing the defendant of his discovery of the forgery without showing that it suffered some injury by reason of the delay.

CONTRACT OR TORT, with four counts, against a national bank, for money paid by the defendant upon a forged indorsement of a check drawn by the plaintiff upon the defendant and charged to the plaintiff's account. Writ dated March 20, 1903.

The following is a copy of the check with the indorsements thereon:

" Boston, Mass., Sept. 14, 1900.                               No. 6432.
     " The Metropolitan National Bank
" Pay to the order of James J. Brown          $3419 75/100
Thirty four hundred nineteen and 75/100          Dollars.
                                   " James R. Murphy."
[Rev. Stamp Cancelled,]
          " J. R. M.
     " Sept. 14, 1900."

Written across the face of the check was the following certification:

" Certified — Pay only through Boston Clearing House when properly endorsed. Metropolitan National Bank. By I. E. Noyes, Pres."

The back of the check had the following written upon it:

" James J. Brown.
     Michael J. Moore.
" Endorsements guaranteed
          Sept. 15, 1900.
" Pay only through Clearing House to
     The Atlas National Bank of Boston.
                    " J. L. Foster, Cashier."

In the Superior Court the case was tried before *Hardy,* J. At the close of the evidence the defendant asked for twenty-one rulings, the subjects of which are disposed of by the opinion of the court. The judge refused to make any of the rulings requested and ordered a verdict for the plaintiff in the sum of $3,883.12, that being the amount of the check with interest from January 1, 1900. At the request of the defendant the judge reported the case for determination by this court. If any of the rulings or the ordering of the verdict was wrong, the defendant

was to be granted a new trial; otherwise, judgment was to be entered on the verdict.

*J. E. Cotter & C. Reno*, (*J. P. Fagan* with them,) for the defendant.

*D. V. McIsaac*, (*P. D. Morris* with him,) for the plaintiff.

KNOWLTON, C. J. The plaintiff had on deposit in the defendant bank, subject to be drawn by check, the sum of $3,419.75. On September 14, 1900, he drew a check for that amount, payable to the order of James J. Brown, and delivered it to one Moore, an attorney at law then in good repute, who purported to represent Brown in negotiating a loan to be secured by a mortgage on Brown's real estate. A note and mortgage for $3,500, purporting to be executed by Brown, were delivered by Moore to the plaintiff, and by him passed to a client for whom he was transacting the business. Moore took the check to the defendant bank, and caused it to be certified, and then he went with it to the Federal Trust Company, a banking corporation, and had an interview with the president, with whom he had been acquainted for many years, and introduced to him a companion, as the James J. Brown named in the check. The check bore the indorsement " James J. Brown," and Moore also indorsed it, and it was cashed by the trust company. In due time it was transmitted to the defendant through the clearing house, and was paid. In fact James J. Brown had deceased on December 26, 1899, nearly nine months before these events occurred, and the signatures which purported to be his were forgeries. Moore absconded in September, 1902, and these forgeries were discovered not long afterwards.

The evidence as to all material matters was uncontradicted. The defendant admitted that there were sufficient funds in the bank to meet this check, and that the check was presented and paid, and charged to the plaintiff's account. It also admitted that the death of James J. Brown occurred on December 26, 1899, and introduced in evidence a certified copy from the records of registration of births, marriages and deaths, which showed this fact. There was no evidence of the existence of any other James J. Brown, and there was much uncontradicted evidence that this person was the one intended by the plaintiff in making the check, and in all his negotiations with Moore in reference to

the loan.    The action was brought to recover the amount of this check, upon a declaration containing four counts, stating the alleged liability in different ways.

Upon the admitted facts that the defendant had this money belonging to the plaintiff and paid it out upon this check, the burden is upon the defendant to show that the payment was to the person named in the check, or that the plaintiff was guilty of such negligence in regard to the payment as precludes him from recovery.

The plaintiff did not participate in the acts or conversation attending the payment of the check.    The uncontradicted testimony shows that, from first to last, he dealt with Moore as the attorney of James J. Brown, and that Moore at no time represented the plaintiff in any way in the transaction.    Moore received the check as the representative of Brown, and in procuring the payment at the trust company pretended to be acting in the interest of Brown, and not in the interest of the plaintiff. James J. Brown was represented to the plaintiff as the owner of the real estate proposed to be mortgaged, and the plaintiff caused the title to be examined, and found it standing in his name, and free from incumbrances.    He also found that the property was of sufficient value to secure the payment of $3,500, for which, according to Moore's statement, Brown wished to mortgage it. He had no reason to doubt that Brown was living, and that the note and mortgage duly executed in his name were genuine securities.

It is too plain for question that the James J. Brown named in the check was the person whom the record showed to be the owner of the real estate described in the mortgage, and that the only payment authorized by the drawer of the check was a payment to him.    In that respect the facts are different from those in the cases relied on by the defendant, in which the dealings were with an impostor who assumed a false name, and the check was intended for the person with whom the drawer was dealing, while the fraud was in the representation that he was another person whose name he assumed.    *Robertson* v. *Coleman*, 141 Mass. 231.    *Dunbar* v. *Boston & Providence Railroad*, 110 Mass. 26.    *Metzger* v. *Franklin Bank*, 119 Ind. 359.    *Crippen* v. *American National Bank*, 51 Mo. App. 508.    *Meridian National*

*Bank* v. *Shelbyville National Bank,* 7 Ind. App. 322. *Meyer* v. *Indiana National Bank,* 27 Ind. App. 354.

It is true that the payee was not then living, and that it was impossible to make a payment to him in person; but the death of the payee of a check to whom the drawer has sent it, before it reaches its destination, does not enlarge the rights of the drawee in regard to payment. Nor does his death, unknown to the drawer, before the check is drawn, enlarge the drawee's rights. In such a case the check is either payable to no one, or it may be collected by the executor or administrator, according to the circumstances attending the making and delivery of it. In this case there is nothing to warrant a finding of negligence on the part of the plaintiff in not seeking Brown in person, or verifying Moore's representation that he was living. Nor does it appear that Brown's death affected in any way the defendant or the trust company, to induce the payment of the check upon the forged indorsement. The fraud could have been perpetrated in exactly the same way if Brown had been living. The only difference would have been that the danger of early discovery would have been greater.

The ordinary rule is well established that a banker, on whom a check is drawn, must ascertain at his peril the identity of the person named in it as payee. It is only when he is misled by some negligence or other fault of the drawer, that he can set up his own mistake in this particular against the drawer. *National Bank of North America* v. *Bangs,* 106 Mass. 441. *Danvers Bank* v. *Salem Bank,* 151 Mass. 280. *Greenfield Savings Bank* v. *Stowell,* 123 Mass. 196, and cases cited. *Dedham National Bank* v. *Everett National Bank,* 177 Mass. 392, 395. *Welsh* v. *German American Bank,* 73 N. Y. 424. *Shipman* v. *New York Bank,* 126 N. Y. 318. *Hardy* v. *Chesapeake Bank,* 51 Md. 562. We are of opinion that the plaintiff was guilty of no negligence, in connection with the making or payment of the check, that affects his right to recover. See *Shepard & Morse Lumber Co.* v. *Eldridge,* 171 Mass. 516.

The next question is whether there was evidence of negligence in his failure to discover the forgery, or in his failure promptly to notify the defendant of his discovery of it, such as estops him from claiming his deposit. This check was returned to him,

with his pass book, at the beginning of the next month after it was made, and its payment appeared to be regular.   He did not know Brown's signature, and he had no responsibility as to the ascertainment of the identity of the person to whom the payment was made.   It was the duty of the defendant to do that. He had every reason to suppose that the payment was to the James J. Brown for whom the check was intended.   As the transaction was for a client to whom the note and mortgage belonged, he had no reason to consider the subject further.   We understand that the interest was regularly paid until Moore absconded.   Until then the mortgage was supposed to be good.

We have no doubt that, on the return of his pass book with his checks, it was his duty to do what a reasonable person would be expected to do, in the examination of his account to see whether it was correct.   If there was anything to put him on inquiry as to the identity of the persons to whom payments had been made, it would be his duty to investigate the subject. *Dana* v. *National Bank of Republic*, 132 Mass. 156.   *Leather Manufacturers' Bank* v. *Morgan*, 117 U. S. 96.   But we have been referred to no case in which it is held that this duty requires a depositor, in a case like the present, in which there is no reason to suspect payments to wrong persons, to make an investigation to see whether the indorsements of the payees are forgeries.   It has been held in some cases that his duty does not require it.   *United Security Ins. Co.* v. *Central National Bank*, 185 Penn. St. 586.   See *Janin* v. *London & San Francisco Bank*, 92 Cal. 14; *Hardy* v. *Chesapeake Bank*, 51 Md. 562; *Weisser* v. *Denison*, 6 Seld. 68, 70; *Frank* v. *Chemical National Bank*, 84 N. Y. 209, 213.

We are of opinion that there was no such negligence of the plaintiff in failing to discover the forgery as to estop him from maintaining this action.

There remains the question whether his failure to inform the defendant of the forgery immediately after his discovery of it should bar him.   According to the testimony of the defendant's president, the bank first received notice that the check was not properly indorsed, late in the autumn of 1902.   The testimony, as to the discovery of the forgery by the plaintiff, was that he first heard of the death of James J. Brown about the first of

October, 1902, and the plaintiff testified that he notified the defendant that the signature of Brown was not genuine on the very day that he discovered it. There was no evidence tending to show that the defendant suffered any loss from the failure of the plaintiff to notify it earlier than he did. Moore had absconded a considerable time before the discovery of the forgery, and his whereabouts have not since been known. If there was any delay in giving information, after the plaintiff obtained such knowledge as to warrant him in making a claim on the defendant, there is no good ground for conjecture even that the defendant's position was changed on account of it. Without showing some injury by reason of the delay, the defendant cannot use it as an estoppel against the plaintiff. *Janin* v. *London & San Francisco Bank,* 92 Cal. 14. *Hardy* v. *Chesapeake Bank,* 51 Md. 562. See *Shepard & Morse Lumber Co.* v. *Eldridge,* 171 Mass. 516, 532; *National Bank of North America* v. *Bangs,* 106 Mass. 441. *Danvers Bank* v. *Salem Bank,* 151 Mass. 280. There was no evidence of such negligence of the plaintiff after the discovery of the forgery as to prevent his recovery.

The views that we have expressed make it unnecessary to consider particularly the defendant's requests for rulings. Upon the law and the testimony there was no occasion to give any of them. The defendant introduced no evidence to relieve it from liability for making an unauthorized payment of the plaintiff's money.

The admission of the testimony that there is a custom, when money is to be lent to an individual, not to examine the records in the Probate Court or in registries of death, to see whether the person who is to receive the money is dead, did the defendant no harm. If there had been no testimony on the subject, there would have been no evidence of negligence in failing to make such an examination. If there had been a special reason to seek evidence that Brown was living, it could have been done better in other ways than by searching registries.

*Judgment on the verdict.*