LOUIS GROW *vs.* PRUDENTIAL TRUST COMPANY.

Suffolk.    March 19, 1924. — May 23, 1924.

Present: RUGG, C.J., BRALEY, CROSBY, CARROLL, & WAIT, JJ.

*Bills and Notes,* Forged check, Liability of bank to repay to depositor amount paid on forged check and charged to his account. *Bank. Evidence,* Presumptions and burden of proof. *Agency,* Fraud of agent. *Practice, Civil,* Verdict ordered on auditor's report as only evidence.

A banking institution is bound to know the signatures of its depositors, and payment, either over the counter or through a clearing house, of a forged check purporting to be signed by one of its depositors cannot be charged against the depositor if he was wholly free from any neglect or default in connection with the management or supervision of his affairs or business which contributed to the fraud practised upon the banking institution. Per BRALEY, J.

An action by a depositor in a bank against the bank to recover the amount of checks upon which the plaintiff's name had been forged and which the defendant had paid was referred to an auditor, whose findings were, in substance, that the forgeries were by one to whom the plaintiff, who was unskilled in bookkeeping and banking matters, had entrusted the entire management of his banking affairs and who, for a period of several months, had concealed his fraud by removing the fraudulent checks from envelopes, returned by the bank to the depositor with statements of monthly business, and by altering such monthly statements; that each statement had at the bottom the following words: " Please examine this account at once and report any errors thereon. If not reported on within 10 days we will take it for granted that our accounts agree; " that the plaintiff did not personally compare the bank statements, returned checks, or check stubs with each other or with the account books and " that the plaintiff was not guilty of negligence in not discovering the forgeries before he did." At the trial in the Superior Court, the plaintiff introduced the report of the auditor and both parties rested. The trial judge ordered a verdict for the plaintiff and at the request of the parties reported the action to this court for determination. *Held,* that

(1) The burden of proof was on the defendant to show that the plaintiff was guilty of such negligence as to preclude his recovery;

(2) The defendant having rested on the report of the auditor, the verdict ordered for the plaintiff should not be reversed unless the findings of the auditor as a matter of law required a finding that the defendant had sustained the burden of proving that the plaintiff had been guilty of such negligence as would preclude his recovery;

(3) The fact, that the plaintiff's fraudulent agent knew of his own forgeries, need not, as a matter of law, be imputed to the plaintiff;

(4) The facts found by the auditor warranted his inference of fact that the plaintiff had not been guilty of negligence in not discovering the forgeries before he did;

(5) A finding that the plaintiff was negligent was not required as a matter of law from the facts reported by the auditor;

(6) A verdict for the plaintiff rightly was ordered.

CONTRACT for $13,942.25, alleged to be money had and received by the defendant to the plaintiff's use. Writ dated June 15, 1920.

In the Superior Court, the action was referred to an auditor. Material findings by the auditor are described in the opinion. After the filing of the auditor's report, there was a trial before *Morton,* J. The plaintiff introduced the report in evidence and both parties rested. The judge ordered a verdict for the plaintiff in the sum of $16,159, and, at the request of the parties, reported the action for determination by this court.

*J. E. Hannigan,* for the defendant.

*J. C. Johnston,* (*G. E. Richardson & E. S. Farmer* with him,) for the plaintiff.

BRALEY, J. The only evidence before the jury was an auditor's report in which he finds, that the defendant, which held funds of the plaintiff on deposit, paid out of those funds $13,410 on checks to which the plaintiff's signature had been forged by one Joseph F. Minon. The judge, subject to the exceptions of the defendant, ordered a verdict for the plaintiff, and at the request of the parties reported " the case to the full court for determination."

It is well settled, that the defendant was bound to know the signature of its depositors, and payment of a forged check either over the counter, or through a clearing house, could not be charged against the plaintiff if he was wholly free from neglect or default in connection with the management or supervision of his business, which contributed to the fraud practised upon the defendant. *Greenfield Savings Bank* v. *Stowell,* 123 Mass. 196. *Mackintosh* v. *Eliot National Bank,* 123 Mass. 393. *Murphy* v. *Metropolitan Na-*

*tional Bank*, 191 Mass. 159, 162, 163.   *Jordan Marsh Co.* v. *National Shawmut Bank*, 201 Mass. 397, 405.   *Welsh* v. *German American Bank*, 73 N. Y. 424.   *Seaboard National Bank* v. *Bank of America*, 193 N. Y. 26.   *Armstrong* v. *Pomeroy National Bank*, 46 Ohio St. 512.   See *Dedham National Bank* v. *Everett National Bank*, 177 Mass. 392, 395.   And the burden of proof was on the defendant who offered no evidence, to show that the plaintiff was guilty of such negligence as to preclude recovery.   *Murphy* v. *Metropolitan National Bank*, *supra*.

The auditor's report was *prima facie* evidence, on which judgment could be entered in accordance with his conclusion. G. L. c. 221, § 56.   It is true that where subordinate facts and findings are reported, a jury may draw inferences of fact different from the inferences drawn by the auditor, and return a verdict different from the result reached by him. But the case at bar is submitted to us at the request of the parties on the question, whether the auditor's report alone required a verdict for the plaintiff.   Inferences of fact which could reasonably be drawn from the evidence in favor of his general conclusion will be presumed to have been so drawn by him, and if they are sufficient to sustain his final conclusion, judgment will be rendered accordingly.   The court under such circumstances will not reverse his findings, unless the facts found by him require it as matter of law.   *Peru Steel & Iron Co.* v. *Whipple File & Steel Manuf. Co.* 109 Mass. 464, 466.

The facts found and stated in the report are substantially as follows:

The plaintiff for many years had been engaged in the business of buying and selling second-hand automobiles under the name of the United Motors of New England, with a place of business in Boston.   He was a man of little education but with much executive and business ability and his business increased rapidly.   In 1919 he desired to reorganize his bookkeeping system upon a scientific basis and decided to employ an accountant.   He made inquiry of a reputable automobile house in Boston, long established and of high

standing, who recommended and introduced one Joseph F. Minon, and the plaintiff employed him to make his income tax report in 1919, to audit his books, and to devise and inaugurate a bookkeeping system, and " look after plaintiff's books every week or two for one year."

Minon at that time was treasurer, manager and holder of all but two shares of the capital stock of the Tileston-Livermore Company, dealing in paper, the capital stock of which he had recently purchased under an agreement requiring substantial payments of cash by him to Livermore within the next few months. The Tileston-Livermore Company carried an account with the National Grand Bank of Marblehead, which cleared its checks through the Merchants National Bank of Boston. The Tileston-Livermore Company had no dealings with the plaintiff.

The reorganization of the bookkeeping system and the opening of a new set of books by Minon did not require all his time. While conducting this work, he had access to, and necessarily used, not only the account books, but the check books, pass books, and checks of the plaintiff showing his financial dealings with the defendant. Minon as the plaintiff's authorized agent with the plaintiff's full knowledge and consent received from the defendant the monthly statements of its account with the plaintiff and the checks returned by it to the plaintiff.

On one occasion a woman, bookkeeper of the plaintiff, observed Minon tearing a sheet of three checks from the back of the plaintiff's current check book, whereupon Minon volunteered the information that he was taking them to use as samples in ordering a new check book. The plaintiff had constant knowledge of all the details of his business, went to the store every day, and hired all the employees, but knew nothing about bookkeeping, and did not personally compare the bank statements, returned checks, or check stubs with each other or with the account books. He entrusted this work to Minon, in whom he believed and had explicit confidence and on whom he relied. The plaintiff's only employee other than Minon during the time in question, who

had access to the check books and account books, was a bookkeeper, who had charge of and kept the plaintiff's books under Minon's supervision. Minon undertook such comparison between the check stubs and the checks with the assistance of the bookkeeper. He read the checks and the figures, and she checked them upon the stubs. The plaintiff endeavored to keep in close touch with his daily balances by taking the figures Minon gave him as the balance at the end of each month and carrying them forward.

On or about February 12, 1920, the defendant notified the plaintiff's bookkeeper that plaintiff's account was overdrawn. The bookkeeper notified the plaintiff, and he went personally to the defendant, demanded and received his checks which had been paid during the portion of that month which had then expired. Among these checks were two checks aggregating to $2,625 on which the plaintiff's name had been forged and which had been deposited to the credit of Tileston-Livermore Company in the National Grand Bank and collected from the defendant through the Merchants National Bank of Boston. The defendant gave the plaintiff credit for these checks. It returned them through the Merchants National Bank to the National Grand Bank, and in return received credit therefor, and the National Grand Bank delivered them to Minon, and the next morning the amount was repaid by the Tileston-Livermore Company. The treasurer of the defendant, who qualified as an expert, testified, that in his opinion the body of each check and the indorsement of the payee, " were in Minon's handwriting, and [the auditor stated] I so find."

Immediately upon the discovery of these forgeries the plaintiff discharged Minon, and employed an accountant to examine his books and bank accounts. The examination resulted in the disclosure of the fact, that between October 24, 1919, and January 24, 1920, both inclusive, there were nine charges against the plaintiff's account for which there were no returned checks, check stubs or vouchers, namely,

| | |
|---|---|
| October 24, 1919 . . . . . . . | $1,750.00 |
| November 1, 1919 . . . . . . | 1,800.00 |
| November 12, 1919 . . . . . . | 1,950.00 |
| November 21, 1919 . . . . . . | 1,750.00 |
| November 28, 1919 . . . . . . | 1,800.00 |
| December 13, 1919 . . . . . . | 1,100.00 |
| January 13, 1920 . . . . . . . | 610.00 . |
| January 19, 1920 . . . . . . | 850.00 |
| January 24 or 27, 1920 . . . . . | 1,800.00 |

$13,410.00

The plaintiff did not call the defendant's attention to any of these charges or to the absence of vouchers therefor until the accountant's examination in February, 1920. He had no personal knowledge thereof until that time, although a detailed statement of the account between the plaintiff and defendant, showing checks, deposits and daily balances during each month in question, was delivered by the defendant to Minon as plaintiff's agent early the following month, and each statement bore at the end of each sheet the following words, " Please examine this account at once and report any errors thereon. If not reported on within 10 days we will take it for granted that our accounts agree." Before Minon's employment, the plaintiff personally received from the defendant the monthly statements of account. After Minon's employment ceased, such statements were received, sometimes by the plaintiff in person, and sometimes by one of his employees. The plaintiff had vouchers for all other charges during that period, and there were no entries on the plaintiff's check books, or account books relating to the nine charges. And, except as to these nine charges, the plaintiff's and the defendant's books balanced with each other. Nine blank checks were missing from the end of the plaintiff's large check book. The plaintiff's monthly statements for October, November and December, 1919, and January, 1920, showed figures written thereon giving a false impression as to a balance, " and in one instance a red ink entry of an overdraft blackened so as to indicate an apparent balance."

The defendant having contended, that the amount for which the plaintiff sought recovery might have been checks signed in blank, or otherwise, and misused by an employee, and that in the absence of the checks themselves it was mere speculation whether the charges were for forged checks, the auditor made this additional finding:

" The larger part of plaintiff's checks were drawn upon a business check book in the usual form, each page whereof contained three checks and their stubs.

" The plaintiff also carried a pocket check book with one check on each leaf and among his employees was a sales manager, Alfred Adolf, whom he sometimes employed to buy cars on the road, and to whom for that purpose he gave another small check book containing checks signed by plaintiff but not filled in. Plaintiff never took a receipt for any such checks but both plaintiff and Adolf testified that in each such instance Adolf accounted for all used checks and returned all unused checks, and that they were destroyed. Plaintiff also testified, that he made a record of cars purchased and of checks given Adolf in a pocket ledger book more than one of which books he might have had during the period in question, but was unable to produce any of the pocket check books or pocket ledger books, for which, however, he testified he had searched thoroughly.

" The plaintiff introduced twenty returned checks from the small check book which he testified were all he could find therefrom. A memorandum of each of these was inserted on the stub of the larger book."

The auditor could draw inferences of fact shown by his findings, that the charges by the defendant against the plaintiff's account in question were checks to which the plaintiff's name was forged by Joseph F. Minon, and that Minon received the checks which he had forged after they had been paid and returned by the defendant to Minon as the plaintiff's agent, and destroyed them and concealed the fact of the drawing, paying, return and destruction from the plaintiff, and that the plaintiff was not guilty of negligence in not discovering the forgeries before he did.

The knowledge of Minon of his forgeries cannot be im-

puted to the plaintiff. *Indian Head National Bank* v. *Clark*, 166 Mass. 27, 31. *Shepard & Morse Lumber Co.* v. *Eldridge*, 171 Mass. 516, 530, 531.

It was a question of fact whether the mistake on the return of the plaintiff's deposit book with the cancelled checks would have been discovered but for the negligence of the plaintiff or his agents, or the fraudulent conduct of Minon in regard to acts within the scope of his employment, and whether the examinations which were made by the bookkeeper other than Minon were such as should have led to a discovery of the forgeries, and thus affect the plaintiff with notice of it. *Dana* v. *National Bank of the Republic*, 132 Mass. 156, 158. *Jordan Marsh Co.* v. *Shawmut National Bank*, 201 Mass. 397, 411.

The auditor was not bound as matter of law to find affirmatively that the plaintiff was negligent, and his general finding is, " that the plaintiff was not guilty of negligence in not discovering the forgeries before he did." We perceive nothing in the report to impeach this conclusion, or which contradicts his special findings, and there was nothing to submit to the jury. *Peru Steel & Iron Co.* v. *Whipple File & Steel Manuf. Co.* 109 Mass. 464, 467. *Dyer* v. *Swift*, 154 Mass. 159, 162. *Connolly* v. *Sullivan*, 173 Mass. 1. *Symonds* v. *Riley*, 188 Mass. 470, 472. *Bovarnick* v. *Davis*, 235 Mass. 195, 198.

The verdict for the plaintiff was ordered rightly, and the entry must be,

*Judgment for the plaintiff on the verdict.*