Gillen, J.
This is an action of contract or tort brought by writ dated July 26, 1939,. The declaration, by amendment, is in three counts. The first is for money had and received by the defendant to the use of the plaintiff in the sum of Seventy-nine and 55/100 Dollars ($79.55); the second is based upon the defendant’s guarantee of certain prior endorsements including a forged endorsement, and alleges that as a result of the action of the defendant in guaranteeing said forged endorsement and in collecting the amount of a certain check the plaintiff has been damaged to the extent of Seventy-nine and 55/100 Dollars, ($79.55). The third count alleges a conversion by the defendant of *445 said check or its proceeds on August 15,1933. The defendant in its answer sets up a general denial and alleges that the plaintiff has failed to comply with Gen. Laws (Ter. Ed.) Chapter 107, Section 46, and that its failure to so comply is fatal to the plaintiff’s right to recover.
At the conclusion of the evidence the plaintiff filed eighteen requests for rulings of law as follows and the action of the trial judge is contained thereon:
1. The Federal Reserve Bank of Boston upon collecting the proceeds of the check from the drawee bank was obligated to pay said proceeds to the plaintiff as the true owner thereof. Railroad Building Loan & Savings Association v. Bankers Mortgage Co., 142 Ken. 564. Life Insurance Co. of Virginia v. Edisto National Bank lof Orangeburg, 166 S. C. 505. United States Fidelity & Guaranty Co. v. First National Bank, (Court of Civil Appeals of Texas, El Paso, March 12, 1936) 93 S. W. 2d 562. Labor Bank & Trust Co. v. Adams, (Court of Civil Appeals of Texas, Waco, January 9, 1930) 23 S. W. 2d 814. Gustin-Bacon Co. v. First National Bank, 305 Ill. 179. Farmers’ State Bank in Merkel v. United States, (C. C. A. 5th Circuit, December 12, 1932), 65 F. 2d 178. Washington Mechanics’ Savings Bank v. District Title Ins. Co. (Court of Appeals of the District of Columbia, May 29, 1933) 65 F. 2d 827. 9 C. J. S., p. 525, sec. 254 and p. 738, sec. 356. DENIED.
2. The guarantee of the defendant covering prior endorsements may be taken advantage of by the plaintiff and inures to its benefit. Farmers’ State Bank in Merkel v. United States, (C. C. A. 5th Circuit, December 12, 1932), 65 F. 2d 178. 9 C. J. S. pp. 526, 527, sec. 254. DENIED.
3. The Federal Reserve Bank of Boston by paying the proceeds of said check to one other than The New England Trust Company as drawer of said check converted said proceeds to its own use. 9 C. J. S., p. 526, sec. 254 and p. 738, see. 356. DENIED.
4. _ The Federal Reserve Bank of Boston upon collecting the proceeds of the check from the drawee *446 named became liable to the plaintiff for money had and received to its use. United Shades Fidelity & Quaranty Co. v. First National Blank, (Court of Civil Appeals of Texas, El Paso, March 12, 1936) 93 S. W. 2nd 562. DENIED.
5. General Laws (Ter. Ed.) Chapter 107, Section 46, has.no application to the ease at bar. GRANTED.
6. General Laws (Ter. Ed.) Chapter 107, Section 46, does not preclude the plaintiff from recovering from the defendant because the plaintiff was not a depositor in the defendant nor was the check drawn upon the defendant. GRANTED.
7. General Laws (Ter. Ed.) Chapter 107, Section 84, does not preclude the plaintiff from recovering from the defendant in the case at bar where the signature of the payee of the check was forged. Howe v. Putnam, 131 Mass. 231, Murphy v. Metropolitan, National Bank, 191 Mass. 159. DENIED.
8. The death of the payee of the check, unknown to the drawer, before the check was drawn, did not affect the obligation of the defendant to pay the proceeds thereof to the true owner. Murphy v. Metropolitan National Bank, 191 Mass. 159, 163. DENIED.
9. The check in the case at bar was either payable to no one or at most it could have been collected by the executor or administrator of the payee. Murphy v. Metropolitan National Bank, 191 Mass. 159, 163. DENIED.
10. The check in the case at bar was not payable to bearer under General Laws (Ter. Ed.) Chapter 107, Section 31, Clause 3, because there was no evidence the plaintiff knew of the death of the payee when the check was drawn. Boles v. Harding. 201 Mass. 103. GRANTED.
11. The plaintiff is not estopped or precluded from maintaining this action. Jordan Marsh Co. v. National Shawmut Bank, 201 Mass. 397. DENIED.
12. In order to preclude the plaintiff from recovering in this action the defendant must show not only that the plaintiff was negligent but that such negligence was a direct and proximate cause of the collection of the proceeds of the check by the defendant and of their payment thereof to one other than the plaintiff. Jordan *447 Marsh Co. v. National Shawmut Bank, 201 Mass. 397 407, 408. Grow v. Prudential Trust Co., 249 Mass. 325, 327. GRANTED.
13. There is no evidence in the case at bar that any negligence of the plaintiff was a direct and proximate cause of the collection of the check by the defendant or its failure to pay the proceeds thereof to the plaintiff. DENIED.
14. There is no evidence in the case at bar that the plaintiff made any material representations to the defendant which it knew or ought to have known were false or that the defendant acted upon any such representation. DENIED.
15. The fact that the payee of the check was dead when the check was drawn did not induce the defendant to collect the proceeds of the check or pay them out. Murphy v. Metropolitan National Bank, 191 Mass. 159, 161. Declined to pass upon it as it called for finding of fact.
16. There was no duty on the plaintiff in the case at bar, where there was no, reason to suspect payment to a wrong person, to make an investigation to see whether the endorsement of the payee was a forgery. Murphy v. Metropolitan National Bank, 191 Mass. 159, 164. DENIED.
17. By General Laws (Ter. Ed.) Chapter 107, Section 45, the forged signature of the payee was wholly inoperative and the defendant acquired no right to collect the proceeds thereof or to pay over said proceeds to anyone other than the plaintiff. DENIED.
18. Upon all the law and the evidence the plaintiff is entitled to a finding in its favor for the amount declared upon. DENIED.
The following Memorandum of Decision of the trial judge was filed:
“By his will dated December 20,1881, James S. Pike of Robbinston, Maine, left certain property outright to his widow and also ‘the use and income of all my remaining properly during the period of her natural life. ’ Of this ‘remaining property’ he, by his will, appointed the plaintiff to be trustee after the death of his widow, and directed the plaintiff, as such trustee, to pay the *448 income of $5,000. thereof to Annie Pike, of Oshkosh, Wisconsin, daughter of my brother Charles, during the period of her natural life and provided further that ‘as fast as the legacies herein made shall lapse or expire by the decease of the several legatees, I direct that such expired legacies shall be transferred’ to certain funds set up in the will for charitable purposes in Calais, Maine. This will was proved and' allowed in 1883.
In 1892, doubtless on the death of the widow, the plaintiff was appointed and qualified as trustee and has continuously acted and is still acting in that capacity. Since its appointment the plaintiff ‘has been paying certain net income from the trust’ in semi-annual payments to Annie S. Pike, which was the real name of the Annie Pike named in the will. She was also known as Annie Sheperd Pike.
The plaintiff, as ‘Trustee, Executor, Guardian Etc.’ apparently had a checking account in the Merchants National Bank of Boston. On August 2,1933, the plaintiff drew a check on that account in the sum of $79.55 payable to the order of ‘Annie S. Pike, 969 Hague Avenue, St. Paul, Minn.’ This was signed by two assistant trust officers of the plaintiff, and was mailed to her at that address, which was the same address to which previous checks had been mailed to her by the plaintiff for over ten years.
This check arrived in St. Paul in due course of post. In fact Annie S. Pike had died in St. Paul on August 27, 1929 — almost exactly four years before the date of this particular check — but the plaintiff did not know she was dead. In fact it did not actually know of her death until some time in January, 1938, when it learned of it by chance.
When this check arrived in St. Paul someone got hold of it and forged the name ‘Annie S. Pike’ on the back of it. Then came two more individual indorsements in blank purporting to be those of T. A. Pike and Chas. S. Hoff. The next indorsement, by a rubber stamp, is that of the West St. Paul State Bank, of St. Paul, Minnesota, to the order of the Empire National Bank, of St. Paul. That indorsement was undated. The Empire National Bank, under the name of Empire National' Bank and Trust Company, indorsed the check, *449 again by a rubber stamp, to the order of the Federal Reserve Bank of Minneapolis. This indorsement was dated August 11, 1933. The Federal Reserve Bank of Minneapolis, again by a rubber stamp, indorsed the check to the order of ‘Bank, Banker, or Trust Co.’ The check was received by the defendant in Boston and it received payment of it from the Merchants National Bank (the drawee) on August 15,1933, indorsing it with a rubber stamp. The Merchants National Bank charged the amount of the check to the plaintiff’s account and sent the paid check in the usual course of business to the plaintiff on or about September 1, 1933.
All the foregoing rubber stamp indorsements of the various banks contained either the words ‘Prior Endorsements Guaranteed’ or ‘All Prior Endorsements Guaranteed.’
The plaintiff on some unspecified date which was in or after January, 1938, made demand upon the defendant for payment of the amount of the check, with which demand the defendant refused to comply.
By writ dated July 26,1939, the plaintiff brought this action of contract or tort to recover $79.55. The declaration, by amendment, has three counts. The first is for money had and received by the defendant to the use of the plaintiff in the sum of $79.55. The second relies on the defendant’s guarantee of prior indorsements, including the forged indorsements and says ‘that as a result of the action of the defendant in guaranteeing the said forged endorsement and in collecting the amount of the said check’ the plaintiff has been damaged to the extent of $79.55. The third count alleges a conversion by the defendant of the check or its proceeds on August 15, 1933.
The defendant in its answer sets up a general denial and alleges that the plaintiff is estopped to maintain this action, and further alleges that the plaintiff has failed to comply with Gen. Laws (Ter. Ed.) Ch. 107, sec. 46 and that its failure to so comply is fatal to the plaintiff’s right to recover.
There is also a declaration in set-off which, in the view which I take of this case, need not be considered.
At the time of her death, Annie S. Pike was somewhat over 72 years of age, having been born on May *450 10, 1857. She was, therefore, 35 years old when the plaintiff began sending her checks for the income in 1892, and it is a fair inference, which I draw, that the plaintiff knew this. It certainly should have known it. From 1892 to 1933 (when Annie S. Pike, if she had been alive, would have been 76 years old) the plaintiff sent semi-annual checks to this woman in a distant city without apparently knowing or caring* whether she was alive. In addition the plaintiff kept on mailing semiannual checks addressed to this woman until 1938 — at which time, if she had been alive, she would have been nearly 81 years of age. For 27 years — from 1892 to 1929 — it is a warrantable inference, which I draw, that the semi-annual checks came back to. the plaintiff bearing the endorsed signature of Annie S. Pike. The plaintiff had every opportunity to become thoroughly familiar with her signature not only from these checks but in all human probability from other sources. But from 1929 to 1933 some person in St. Paul had been forging Annie S. Pike’s name on the back of income checks. There is not in the evidence any suggestion that the plaintiff examined these checks or compared them with any of the earlier checks to see if the signatures corresponded. It seems plain that whatever clerk or other employee of the plaintiff was charged with the duty of keeping track of the checks drawn by the plaintiff on the Merchants National Bank as‘Trustee, Executor, Guardian, Etc.’ contented himself with seeing that the checks corresponded with stubs of the checkbook .or (other record and that the account balanced each month. From the phrase ‘Trustee, Executor, Guardian Etc.’ printed on the check (with no. reference to the plaintiff as trustee under the will of James S. Pike) I infer that several, and perhaps many, trust accounts were mingled in the one checking account at the Merchants National Bank. In my opinion due care on the part of the plaintiff required it, in view of Miss Pike’s advanced age, to make some inquiry from time to time, through some St. Paul Bank or otherwise, as to whether she was alive or dead, particularly in view of the fact that the plaintiff was not dealing with its own money but with income from trust funds which it was bound under the will to use for certain charitable pur *451 poses on her death. Furthermore I believe that due care under these circumstances required the plaintiff to scrutinize the indorsements on Miss Pike’s checks and compare them with the indorsements on some of the earlier checks.
Either of these steps, if taken from time to time, would have served to give the plaintiff actual knowledge of the forgeries and in that event the check in suit would never have been issued. I find that the plaintiff was negligent in issuing the check of August 2, 1933, and that that negligence was the direct and proximate cause of the defendant’s collecting- the check from the Merchants National Bank and crediting or paying the sum of $79.55 to the Federal Reserve Bank of Minneapolis.
The question remains whether on the foregoing facts the plaintiff is entitled to recover on any of the counts in its declaration.
By Gen. Laws (Ter. Ed.) Ch. 107, sec. 142, it is pro-vied that a negotiable instrument is discharged by payment in due course by or on behalf of the principal ■ debtor (the plaintiff, in this case) when the principal debtor becomes the holder of the instrument at or after maturity in his own right, and by sec. 143 a person secondarily liable thereon (the defendant, in this case) is also discharged by any act which discharges the instrument. And the drawer of a check cannot be holder in due course. Gen. Laws. (Ter. Ed.) Ch. 107, sec. 75; Railroad Building & Loan Association v. Bankers Mortgage Co., 51 Pac. 2d. 61 (Kansas, 1935).
It is- plain, and I rule, that the plaintiff cannot recover on the second count of its declaration.
It is also plain that unless its own negligence as found by me precludes it, the plaintiff can recover under the first count'of its declaration. Life Ins. Co. of Va. v. Edisto National Bank, 165 S. E. 178 (So. Car. 1932); Labor Bank & Trust Co. v. Adams, 23 S. W. 2d 814 (Tex. 1930); Gustin-Bacon Co. v. First National Bank, 306 Ill. 179 (1923).
The industry of counsel and my own investigation have failed to disclose the existence of any decided case on all fours with the case at bar. But the principle that a bank is not to be held liable for payment of *452 checks where carelessness of the party seeking to establish liability has contributed in bringing- about the loss is well established. National Bcmlt of North America v. Bangs, 106 Mass. 441; see Blacker & Shepard Co. v. Granite Trust Co., 284 Mass. 9, 13. And such negligence must be a direct and proximate cause of the payment. Jordan Marsh Co. v. National Shawmut Bank, 201 Mass. 397, 407, 408.
Much stress is laid by the plaintiff on the cases of Murphy v. Metropolitan National Bank, 191 Mass. 159, and the Jordan Marsh Company case cited above. It seems to me that neither is controlling of the case at bar. In the Murphy case the plaintiff did not know, and had no occasion to- know, the payee’s signature, where as in the case at bar the plaintiff had had many years in which to become acquainted with the payee’s signature and had had nearly four years in which to take note that it was being forged. In the Jordan Marsh Company case there had been an elaborate fraud practiced on the plaintiff by trusted employees, whereas in the case at bar there was no fraud practiced upon the plaintiff which induced the plaintiff to issue the check.
I find, as above stated, that the plaintiff was negligent in issuing the check sued on, and that that negligence was the direct and proximate cause of the receipt by the defendant of the $79:55. I find for the defendant o-n -Count 1.
As to Count 3, for conversion, the check seems to have been rightfully in the possession of the defendant. If there was any conversion, either of the check or its proceeds, the plaintiff is in no position to assert it, and is estopped from so doing.
The plaintiff has presented 18 requests for rulings, I dispose of them as follows: Nos. 1, 2, 3, 4, 7, 8, 11, 13, 14, 16, 17 and 18 I deny. Nos. 5, 6 , 10 and 12 I grant. As to No. 9 it is nothing more than a quotation from the opinion in Murphy v. Metropolitan National Bank, 191 Mass. 159, at p. 163. The plaintiff negligently issued this check and must -stand the consequences. In no event could this check have been collected by Annie S. Pike’s Executor or Administrator. I deny this request. No. 15 calls only for a finding of fact. I declined to pass upon it.”
*453 The Report contains all the evidence material to the questions reported.
The trial judge found for the defendant on all counts of the declaration.
The plaintiff claims to be aggrieved by the denial of its requested rulings numbered 1, 2, 3, 4, 7, 8, 11, 13, 14, 16, 17 and 18.
On the evidence and the admitted facts all the findings of facts of the trial judge were warranted. It is well established that where the negligence of the drawer of a check issued to a deceased or non-existent person is the proximate cause of the payment of the check on a forged endorsement of the payee that the drawer of the check cannot recover in an action of contract. Gloucester Bank v. Salem Bank, 17 Mass. 33, National Bank of North America v. Bangs, 106 Mass. 441, Dedham National Bank v. Everett National Bank, 177 Mass. 392; Murphy v. Metropolitan National Bank, 191 Mass. 159; Jordan Marsh Company v. National Shawmut Bank, 201 Mass. 397; Barmby v. Merrimack Cooperative Bank, 285 Mass. 37.
The plaintiff urges that the evidence did. not warrant the conclusion that the plaintiff was negligent. But we think that its failure to compare the endorsements of the payee on the checks issued (for example) in 1930, 1931, 1932 and 1933 with the signatures of the payee on checks issued prior to 1929’ in itself could be found to be negligence.
The plaintiff contends on this point that none of the checks issued prior to 1929 were offered in evidence and that therefore the trial judge had no evidence before him of a standard of the genuine signature of the beneficiary (payee of check) of the trust on which to conclude that the plaintiff possessed a standard, of a genuine signature; and that even the checks prior to 1929 may have had forged endorsements.
*454 But “the maxim of law is that all things shall be presumed to have been rightly and correctly done until the contrary is proved”,
Narragansett Bank v. Atlantic Silk Co. Met. 282, at 287 and on the basis of this presumption the trial judge was warranted in concluding that the plaintiff was in possession of standards of a genuine signature of the payee of these checks which could be used for comparison with the forged payee signatures of 1930-1931-1932-and 1933.
Even if, as now contended by the plaintiff, this inference could not be drawn, the finding of negligence on the part of the trial judge could be equally well sustained if in the course of thirty-seven years of dealing with its beneficiary the plaintiff neglected to obtain a standard of her signature. It is not the reason for the finding of the trial judge but his finding that is important.
It is the duty of a trustee to- exercise such care and skill as a man of ordinary prudence would exercise in dealing with his own property. Harvard College v. Amory, 9 Pick. 446; Restatement of the Law: Trusts, secs. 174 & 176.
For a trustee to forward checks to a beneficiary from 1892 to 1933 without examining the signatures of said beneficiary when the checks were returned could be found to be negligence, as could also the failure of a trustee to have in his possession a standard of the signature of the beneficiary for the purpose of comparison.
The trustee here under the Letter of Trust issued by the Probate Court was bound among other obligations to (a) “Render a just and true account of the income and profits of said estate and of your payments and expenses on oath into said court once in three years . . . ”.
(b) “ Settle your account at the expiration of said trust with the Judge of Probate, pay and deliver all balances, sums of money or other property that are due, and give possession *455 of any other estate, with which you are entrusted, to the persons entitled thereto'.”
It is apparent that it could have been found that due care on the part of the trustee would require it to inquire as to whether the beneficiary was alive in 1933, she then being 76 years of age (see death certificate) in view of the fact that the said trustee was obligated under the will to use the money for certain charitable purposes at her death. It was not until 1938 that her death years before was discovered.
We think the finding of the trial judge to the effect “that the plaintiff was negligent in issuing the check of August 2, 1933, and that this negligence was the direct and proximate cause of the defendant’s collecting the check from the Merchants National Bank and crediting or paying the sum of $79.55 to the Federal Reserve Bank of Minneapolis,” was warranted by the evidence reported. Dang v. National Bank of the Republic, 132 Mass. 156, Brady on Bank Checks, 2nd ed., secs. 161, 182, 183, Prudential Ins. Co. v. Nat. Bank of Commerce, 227 N. Y. 510, 13 Harvard Law Review, 304, 15 Harvard Law Review, 315, 32 Harvard Law Review, 287, and therefore must stand. Moss v. Old Colony Trust Co., 246 Mass. 139, 143. Herman v. Sadolf, 294 Mass. 358, 360.
We distinguish Jordan Marsh Company v. National Shawmut Bank, 201 Mass. 397, stressed by the plaintiff as authority for the proposition that its action in the instant case was not negligent and not the proximate cause of the payment of the check; there the payees were unknown to the plaintiff and fraud was involved in the issuance of the checks, — here the plaintiff issued the checks voluntarily and the payee was known to the plaintiff. In fact the payee was the beneficiary to whom it owed a duty as a fiduciary under the trust as well as an obligation to conserve the assets of the trust and under the will to pay over said as *456 sets to eharitaible funds upon the death of the beneficiary.
The plaintiff, therefore, cannot recover under count one of the declaration.
Gen. Laws (Ter. Ed.), Chap. 107, sec. 142, provides that a negotiable instrument is discharged by payment in due course by or on behalf of the principal debtor when the principal debtor becomes the 'holder of the instrument at or after maturity in its own right and by sec. 143 a person secondarily liable thereon (the defendant here) is also discharged by any act which discharges the instrument.
The plaintiff cannot recover, therefore, on count two. Nor do we think there can be recovery on the count for conversion. In view of the findings of t’he trial judge, even if the defendant technically could be held to have exercised what might be termed “wrongful dominion” over the check in question, the plaintiff’s own negligence prevents it from taking advantage of the defendant’s act.
We distinguish the circumstances here with those in Blacker & Shepard Co. v. Granite Trust Co., 284 Mass. 9. There the plaintiff was blameless.
We find no error. The order is, — Report dismissed.